1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pacific Indemnity Co., | No. CV-08-0466-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Pickens Kane Moving & Storage Co.; Atlas Van Lines, Inc., | |
| Defendants. | |
| Pickens Kane Moving & Storage Co. | |
| Cross-Claimant | |
| vs. | |
| Atlas Van Lines, Inc. | |
| Cross-Defendant | |
| Atlas Van Lines, Inc. | |
| Cross-Claimant | |
| vs. | |
| Pickens Kane Moving & Storage Co. | |
| Cross-Defendant. | |

This case arises out of the loss of household goods by fire during shipment from Illinois to Arizona and California. Ina and Murray Manasters insured their household goods

through plaintiff Pacific Indemnity Company, who paid the loss claim in the amount of $2,493,155.48, and was then subrogated to the Manasters' interests. Pacific Indemnity then filed this action against Pickens Kane Moving & Storage Company ("Pickens Kane") and Atlas Van Lines, Inc. ("Atlas"), the motor carriers who handled the Manasters' shipment, asserting claims under the Carmack Amendment, 49 U.S.C. § 14706, and state law claims of negligence and breach of contract.

The court now has before it Pacific Indemnity's motion for summary judgment (doc. 106), Atlas' response (doc. 118), Pickens Kane's response (doc. 120), and Pacific Indemnity's respective replies (docs. 129, 132). We also have before us Pickens Kane's motion for summary judgment against Atlas (doc. 109), Atlas' response (doc. 121), and Pickens Kane's reply (doc. 136); and Pickens Kane's motion for summary judgment on Counts II and III of the first amended complaint (doc. 113), Pacific Indemnity's response (doc. 126), and Pickens Kane's reply (doc. 137). We also have before us Atlas' motion for partial summary judgment (doc. 116), Pacific Indemnity's response (doc. 123), Pickens Kane's response (doc. 133), and Atlas' respective replies (docs. 134, 138).[1]

## I. Background

In September 2006, the Manasters requested a quote from Pickens Kane for the cost of packing and transporting their household goods, consisting mainly of fine art and antiques, from their residence in Illinois to locations in Arizona and California. Pickens Kane then contacted freight broker Transportation Consultants International, Inc. ("TCI") to provide a quote to arrange for the transportation of the Manasters' goods from the Pickens Kane warehouse in Illinois to Arizona and California. TCI, in turn, contacted Atlas Van Lines for a quote on the shipment. Atlas quoted the cost of shipment at $9,645.00. Its quote did not

---

[1]Pickens Kane's motion to expedite ruling on motion for leave to file separate summary judgment motions against Pacific Indemnity and Atlas Van Lines (doc. 105) is rendered moot by virtue of our order granting such leave on May 4, 2009 (doc. 108). Therefore, the motion is denied (doc. 105).

contain a declaration of value, but instead referred to Atlas' tariff.[2] Relying on Atlas' quote, TCI submitted a quote to Pickens Kane for $11,575.00. TCI's quote to Pickens Kane provided, "Quote does not include insurance."[3]  Atlas SOF ¶ 10. Based on TCI's quote, Pickens Kane quoted the Manasters $14,121.50 for transportation charges, with no charges included for valuation. Id. ¶ 12.

On October 11, 2006, after the quotes were accepted, the Manasters requested that Pickens Kane obtain $1 million in coverage for transportation of the shipment. Id. ¶ 15. Ina Manaster signed a Pickens Kane bill of lading[4] releasing the shipment for a declared value of $1 million (the "Manasters' Bill of Lading") and Pickens Kane transported the Manasters' goods from their residence to the Pickens Kane warehouse in Illinois. Id. ¶ 17. Although Pickens Kane knew of the $1 million coverage request, it did not contact TCI to amend its agreement to include the $1 million valuation. Pickens Kane MSJ on Counts II & III at 3.

On November 2, 2006, Atlas picked up the shipment from the Pickens Kane warehouse and issued its bill of lading, identifying "TCI Pickens Kane Fine Art" as the shipper and the Manasters as the "consignee." ("Atlas bill of lading"). Atlas SOF ¶ 22 & exhibit N. Pickens Kane issued its own bill of lading also showing "PK Fine Art/T.C.I." as the shipper. Id., exhibit O. Pickens Kane did not declare a valuation for the goods on either the Atlas bill of lading or on its own bill of lading. Id. ¶¶ 25, 28. The shipment was destroyed by fire during transit.

## II. Pacific Indemnity's Motion for Summary Judgment

Pacific Indemnity argues that Pickens Kane, as the receiving carrier, and Atlas Van Lines, as the delivering carrier, are both liable under the Carmack Amendment for damage

---

[2] A tariff is a publication filed with the Safety Transportation Board containing the rates, charges, classifications, rules, regulations, and practices of common carriers.

[3] A liability limit greater than the carrier's tariff is properly known as "valuation," but is sometimes referred to as "insurance." Atlas MSJ at 2.

[4] A bill of lading is a contract between a shipper and carrier for the carriage of goods. Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 18-19, 125 S. Ct. 385, 390 (2004).

to the Manasters' property. It seeks judgment against Pickens Kane in the amount of $1 million, the declared value of the shipment, and/or interlocutory judgment against both Pickens Kane and Atlas as to liability, with the issue of damages to be determined at trial.

A shipper establishes its *prima facie* case under the Carmack Amendment when it shows delivery of the goods to the carrier in good condition, arrival in damaged condition, and the amount of damages. Missouri Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 138, 84 S. Ct. 1142, 1145 (1964). The receiving carrier, the delivering carrier, and the carrier over whose line or route the property is transported when transported under a through bill of lading, have liability under the Act. 49 U.S.C. § 14706(a)(1).

Both Pickens Kane and Atlas acknowledge that they are liable for damage to the Manasters' goods under the Carmack Amendment. See Pickens Kane Response at 1; Atlas Response at 1. Pickens Kane does not dispute that it received the Manasters goods in good condition, the goods arrived in damaged condition, and that the measure of damages exceeded the declared value of $1 million. Therefore, Pickens Kane is liable to Pacific Indemnity under the Carmack Amendment for $1 million, the full declared value of the shipment.[5]

The remaining issue is the proper apportionment of liability as between Pickens Kane and Atlas.

### III. Apportionment

#### A.

The Carmack Amendment makes the originating carrier liable for damages to a shipper's cargo regardless of whether the damage occurred on its line or on the line of a connecting carrier. 49 U.S.C. § 14706(a). This provision was designed to "relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous

---

[5]Because the Carmack Amendment is the exclusive remedy for breach of an interstate shipping contract, preempting common law claims against a carrier, see Hall v. No. Am. Van Lines, Inc., 476 F.3d 683, 689 (9th Cir. 2007), Pickens Kane's motion to dismiss Counts II (negligence) and III (breach of contract) is granted (doc. 113).

- 4 -

carriers handling an interstate shipment of goods." Reider v. Thompson, 339 U.S. 113, 119, 70 S. Ct. 499, 502 (1950). A carrier found strictly liable under subsection (a) is then "entitled to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property." 49 U.S.C. § 14706(b).

Urging a narrow construction of § 14706(b), Pickens Kane argues that because the loss occurred while the property was in Atlas' custody, it is entitled to indemnification of the full amount of its determined liability ($1 million) regardless of any contractual limitation of liability contained in Atlas' bill of lading. We disagree.

In Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 33, 125 S. Ct. 385, 398 (2004), the United States Supreme Court held that when an intermediary contracts with a downstream carrier to transport goods, the cargo owner's recovery against the downstream carrier is "limited by the liability limitation to which the intermediary and carrier agreed." The Court reasoned that the downstream carrier "could not be expected to know if the [intermediary] had any outstanding, conflicting obligation to another party." Id. (citing Great N. Ry. Co. v. O'Connor, 232 U.S. 508, 514, 34 S. Ct. 380, 383 (1914)); see also Werner Enters., Inc. v. Westwind Maritime Int'l, Inc., 554 F.3d 1319, 1325 (11th Cir. 2009) (stating that "[c]arriers do not need to investigate upstream contracts"). Instead, the cargo owner's remedy is against the intermediary, "the only party that definitely knew about and was a party to both of the bills of lading." Kirby, 543 U.S. at 35, 125 S. Ct. at 400.

Here, Pickens Kane is the only party that knew about the Manasters' $1 million declared valuation and was a party to both the Manasters and the Atlas bills of lading. Therefore, "it seems logical" that Pickens Kane "should bear responsibility for any gap between the liability limitations in the bills." See id. We reject Pickens Kane's argument that a carrier in whose possession the cargo was destroyed is automatically liable under § 14706(b) for the full amount of the receiving carrier's liability. Instead we consider whether the contract between Pickens Kane and Atlas effectively limited Atlas' liability.

**B.**

The Carmack Amendment provides that a carrier is liable to a shipper for the "actual loss or injury to the property." 49 U.S.C. § 14706(a). While "actual loss" had previously referred to the depreciated value of the goods, § 14706(f)(2) now establishes a higher liability standard for household goods carriers. A carrier's maximum liability for loss to household goods is the "replacement value of the such goods, subject to a maximum amount equal to the declared value of the shipment and to rules issued by the Surface Transportation Board ["STB"] and applicable tariffs." 49 U.S.C. § 14706(f)(2). This kind of coverage is referred to under the statute as "full value protection." Id. In the event a shipper elects "full value protection" but does not declare a value on the bill of lading, the STB has ruled that the "assumed valuation" of the shipment, and therefore a carrier's maximum liability for the "full value" of the shipment is $4.00 per pound.[6] See Released Rates of Motor Common Carriers of Household Goods, Amendment No. 4 to Released Rates Decision No. MC-999, 2001 WL 1637941 (Dec. 18, 2001); Released Rates of Motor Common Carriers of Household Goods, Amendment No. 5 to Released Rates Decision No. MC-999, 2007 WL 1696990 (June 11, 2007) ("Amendment 5").

However, an interstate carrier of household goods may limit its liability "to a value established by written declaration of the shipper or by a written agreement." 49 U.S.C. § 14706(f)(1). In order to limit its obligation to provide "full value protection," a carrier must receive a written waiver from the shipper. Id. § 14706(f)(2) and (3).

Although Atlas concedes its liability under § 14706(b), it contends that its liability is limited by the Atlas bill of lading, and its applicable tariffs, which set a maximum liability

---

[6]Although the STB has sought comment on the continued propriety of a $4.00 per pound assumed valuation, we are not aware that any change has been adopted. See Amendment 5, infra. Moreover, Atlas' Exceptions Tariff 104-G increases Atlas' assumed valuation to $5.00 per pound. See infra n.7.

- 6 -

of $5.00[7] per pound. The Atlas bill of lading contains the following valuation provision, which was to be completed by the shipper:

> **VALUATION**: The released rates for shipments moving under this bill of lading vary with the services provided under the tariff and Carrier's tariff is incorporated into this bill of lading for determination of which released rate applies. Shipper has released the entire shipment to a value not exceeding:
>
> (TO BE COMPLETED BY THE SHIPPER SIGNING BELOW)
>
> ☐ The maximum released rate set forth in the tariff for shipments on which the specified services are being provided, which may be either $.60 per pound per article or [$5.00] per pound. (This is not insurance but a Limit on Carrier's Liability.)
>
> ☐ The declared value for the property of $_____. If this amount exceeds the maximum released rate in the tariff, Carrier shall obtain insurance in this amount on Shipper's behalf for the charges set forth in the tariff.
>
> SHIPPER'S SIGNATURE _____ DATE _____
>
> IF NO DECLARATION IS MADE, THE SHIPMENT SHALL BE DEEMED RELEASED TO THE VALUE SET FORTH IN THE TARIFF.

Atlas SOF, exhibit N. Although Pickens Kane signed the bill of lading as the shipper, it did not complete or sign the valuation provision. It now argues that because it did not complete the valuation provision, it did not provide a written waiver of liability as required by § 14706(f)(3), and therefore Atlas did not effectively limit its liability to below the declared amount of $1 million. We find this argument unavailing for several reasons.

First, Atlas dealt exclusively with TCI and Pickens Kane; it had no contract with the Manasters. We have already concluded that Atlas had no knowledge of the $1 million valuation, nor was it required to investigate any upstream contract in order to discover that the Manasters had declared a value. See Kirby, 543 U.S. at 33, 125 S. Ct. at 398; Werner Enters., 554 F.3d at 1325. Therefore, Atlas is not bound by Pickens Kane's agreement with the Manasters.

---

[7]The assumed valuation under Tariff 400-N was originally $4.00 per pound but was adjusted to $5.00 per pound by Atlas' Exceptions Tariff 104-G. We will modify all references to show the current value of $5.00 per pound.

- 7 -

Second, "TCI Pickens Kane Fine Art" was identified as the "shipper" on both the Atlas bill of lading and the Pickens Kane bill of lading. As an entity experienced in the transportation industry, Pickens Kane is bound by the express terms of its agreement. See Travelers Indem. Co. v. The Vessel Sam Houston, 26 F.3d 895, 899 (9th Cir. 1994) (holding that a sophisticated shipper who was familiar with the bill of lading failed to raise a question of material fact as to whether it was denied a fair opportunity to opt out of the liability clause in the bill of lading).

Finally, we construe § 14706(f)(2) and (3), which defines "replacement value" as subject to rules established by the STB and by applicable tariffs, as providing that a written waiver is not required to provide "full value protection" limited to $5.00 per pound. Both the STB decisions and Tariff 400-N provide that, in the absence of a shipper's declaration of higher value, the assumed value, and therefore the carrier's maximum liability, is $5.00 per pound.

But even if a written waiver was required, we conclude that the Atlas bill of lading was sufficient to limit Atlas' liability. A carrier of household goods seeking to limit liability under the Carmack Amendment must (1) maintain a tariff in compliance with Interstate Commerce Commission [now Surface Transportation Board] requirements, (2) give the shipper a reasonable opportunity to choose between two or more levels of liability, (3) obtain the shipper's agreement as to his choice of carrier liability limits, and (4) issue a bill of lading prior to moving the shipment that reflects such agreement. Hughes Aircraft Co. v. North Am. Van Lines, Inc., 970 F.2d 609, 611-12 (9th Cir. 1992). There is no dispute that Atlas maintained a tariff in compliance with the Surface Transportation Board and that it issued a bill of lading prior to moving the shipment. Therefore, we need only consider factors (2) and (3).

The Atlas bill of lading adequately provided TCI/Pickens Kane Fine Art with a reasonable opportunity to choose between different levels of liability. The bill provided that Pickens Kane could chose either "the maximum released rate set forth in the tariff . . . which may be either $.60 per pound per article, or $5.00 per pound," or the "declared value for the

property." Atlas SOF, exhibit N. Pickens Kane was further advised that "IF NO DECLARATION IS MADE, THE SHIPMENT SHALL BE DEEMED RELEASED TO THE VALUE SET FORTH IN THE TARIFF." Id. (emphasis in original). Therefore, Pickens Kane had the requisite notice of available options and a reasonable opportunity to make a deliberate, informed selection of Atlas' liability limit.

Pickens Kane neither declared a valuation, nor signed the valuation provision. Nevertheless, the bill clearly stated that "IF NO DECLARATION IS MADE, THE SHIPMENT SHALL BE DEEMED RELEASED TO THE VALUE SET FORTH IN THE TARIFF." By not completing the valuation provision, Pickens Kane, a sophisticated shipper familiar with the transportation industry, indicated its choice to release the value of the shipment to the amount set forth in the tariff. Therefore, each element of the Hughes test is satisfied.

We now look to the applicable tariff to determine the released value.

## C.

The Atlas bill of lading expressly incorporated the provisions of Tariff 400-N, which provides:

> Unless the shipper expressly waives carrier's maximum liability as set forth in Part (1) above [i.e., "the lump sum value declared by the shipper, which may not be less than $5,000 or ($5.00) per pound"] and releases the shipment to a value not exceeding 60 cents per pound per article, the carrier's maximum liability for loss or damage shall be either the lump sum value declared by the shipper or an amount equal to not less than [$5.00] for each pound of weight in the shipment, whichever is greater."

Atlas SOF, exhibit P. In other words, if the shipper does not expressly release the shipment to a value of $.60 per pound per article, the carrier's maximum liability is the greater of the declared value or $5.00 per pound.

It is undisputed that Pickens Kane did not expressly release the shipment to a value of $.60 per pound per article. It is also undisputed that Pickens Kane did not declare a higher value for the shipment on either the Atlas bill of lading or the Pickens Kane bill of lading. Therefore, according to the terms of the Atlas bill of lading and Tariff 400-N, Pickens Kane agreed to Atlas' maximum liability of $5.00 per pound.

- 9 -

We reject Pacific Indemnity and Pickens Kane's argument that Atlas is not entitled to a limitation of liability because the Atlas bill of lading failed to include specific notice and waiver language contained in Tariff 400-N. It is true that Tariff 400-N requires specific language in a bill of lading to obtain a shipper's waiver of "full value protection," in other words to reduce a carrier's maximum liability to "60 cents per pound." Without this language, Pickens Kane could not have effectively elected the "60 cents per pound" option. However, the Tariff's language relating to the $5.00 per pound maximum liability was sufficiently incorporated into the bill of lading. The failure to include verbatim language does not deprive Atlas of its otherwise effective liability limitation.

### IV. Weight of Shipment

Pacific Indemnity argues that an issue of fact exists with respect to the weight of the Manasters' shipment. It argues that because the Manasters were shipping property to locations in both Arizona and California, Atlas's driver, Thomas Szalga, issued two bills of lading for the shipment–each indicating a shipment weight of 10,500 pounds. Mr. Szalga testified that the total weight of the Manaster shipment was 21,000 pounds, and that he attributed 10,500 pounds of the shipment on the Arizona bill of lading, and 10,500 pounds on the La Jolla, California bill of lading. Plaintiff's Statement of Add'l Facts ¶ 46. Therefore, according to Pacific Indemnity the total weight of the shipment was 21,000 pounds.

Atlas contends, on the other hand, that there was only one shipment with a total weight of 10,500 pounds. Although there were two bills of lading, each referenced the same shipment number and the same registered weight–10,500 pounds. It contends that the four separate inventories which itemized the total cubic feet for each of the four deliveries (one in California, three in Arizona) establish that the shipment was a total of 1,382 cubic feet, or 9,674 pounds. Atlas' SSOF ¶¶ 4-5.

On a motion for summary judgment, we must examine the evidence in the light most favorable to the non-moving party and may not weigh conflicting evidence. Because a

- 10 -

genuine issue of material fact exists with respect to the weight of the Manasters' shipment, we deny summary judgment as to the amount of damages.

### V. Conclusion

**IT IS ORDERED GRANTING** Pacific Indemnity's motion for summary judgment on Count I against Pickens Kane and Atlas with respect to liability under 49 U.S.C. § 14706(a)(1). We conclude that Pickens Kane is liable to Pacific Indemnity in the amount of $1 million (doc. 106).

**IT IS ORDERED GRANTING** Pickens Kane's motion for summary judgment on Counts II and III of the first amended complaint (doc. 113).

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** Pickens Kane's motion for summary judgment against Atlas Van Lines, (doc. 109), and concluding that Atlas is liable to Pickens Kane under 49 U.S.C. § 14706(b) in the amount of $5.00 per pound of the shipment. An issue of fact remains as to the total weight of the shipment.

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** Atlas Van Lines' motion for partial summary judgment against Pacific Indemnity and Pickens Kane (doc. 116). Atlas is liable to Pickens Kane in the amount of $5.00 per pound, but an issue of fact remain as to the total weight of the shipment.

**IT IS ORDERED DENYING** Pickens Kane's motion to expedite ruling on motion for leave to file separate summary judgment motions as moot (doc. 105).

DATED this 8th day of September, 2009.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge